671 So.2d 567 (1996)
Kathleen E. Dwyer, Wife of David Andrew BLANQUE
v.
David Andrew BLANQUE.
No. 95-CA-2012.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1996.
Rehearing Denied April 24, 1996.
*568 Terence L. Hauver, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for Plaintiff/Appellee.
Joseph C. Bartels, Law Offices of Joseph C. Bartels, New Orleans, for Defendant/Appellant.
Before CIACCIO, WALTZER and MURRAY, JJ.
WALTZER, Judge.
STATEMENT OF THE CASE
David Blanque and Kathleen Dwyer are the parents of Jennifer Lynn Blanque, who was born on 27 March 1977 with permanent physical and mental disabilities. When Blanque and Dwyer divorced on 23 December 1982, Jennifer was placed in Dwyer's permanent custody and Blanque was ordered to pay child support in the amount of $300.00 per month. This judgment was amended in 1983 to conform with a consent agreement between the parties requiring Blanque to cover Jennifer under a health insurance policy and to pay all her medical expenses, in addition to the child support. On 10 August 1990, Dwyer filed a Rule to Show Cause for an increase in child support, for payment of Jennifer's medical expenses and for arrearages in child support. On 27 December 1990, the trial court increased the child support to $1,000 per month retroactive to the filing of the Rule, ordered Blanque to pay Dwyer past due child support, attorney's fees and one-half of the amount she had incurred in extraordinary child care expenses, and by amended judgment required Blanque to continue to carry Jennifer on his hospitalization insurance and to pay all of her ordinary medical expenses and 70% of the extraordinary child care expenses. A month later, Blanque was back in the trial court with a Rule for Reduction in Child Support, which was tried on 10-11 July 1991 with various Rules filed by Dwyer for arrearages in child support, interest, attorney's fees, court costs and contempt of court. The trial court reduced Blanque's support obligation to $750 per month and maintained all other aspects of the prior judgment regarding insurance, medical expenses and extraordinary child care expenses, and awarded Dwyer past due child support, interest and attorney's fees. Blanque appealed, and this Court, after remand to the trial court for written reasons for judgment[1], affirmed. Blanque v. Blanque, 624 So.2d 458 (La.App. 4 Cir.1993).[2]
On 28 May 1993, the trial court denied Blanque's motion to reduce substantially his visitation responsibility and entered a consent judgment setting forth a visitation schedule and allowing Blanque reimbursement of 30% of any extraordinary medical expenses he incurred during periods of visitation with Jennifer. That judgment was not appealed.
*569 On 5 April 1995, nine days after Jennifer's eighteenth birthday, Dwyer filed a Motion for Order of Continuation of Child Support, Medical and Extraordinary Expenses, and Visitation Judgments pursuant to La.R.S. 9:315.22. Blanque excepted to the motion on the grounds of vagueness, incorrect venue and failure to state a cause of action. By judgment of 16 May 1995, the trial court denied the exceptions and ordered that all prior Judgments of the court extant as of 26 March 1995 remain in full force and effect, pending further orders of the trial court. From that judgment, Blanque appeals. We amend the trial court's judgment to be effective until Jennifer Blanque attains the age of nineteen, and, as amended, affirm.

STATEMENT OF FACTS
The uncontroverted evidence establishes Jennifer's severe disability. A 1992 New Orleans Public School Multidisciplinary Integrated Report classified her as multi-handicapped with moderate mental impairment, orthopedic handicaps, and seizure disorder. Her adaptive behavior was found to be below expectancy for her chronological age, with an overall adaptive functioning in the low range and at an age equivalent of 4 years, 1 month. Her medical examination at that time showed a history of grand mal seizures, with a diagnosis of multiple congenital anomalies, with ocular myopia, multiple orthopedic problems including congenital hip dislocation, recurrent clubbed feet in spite of surgical correction, bilateral knee dislocation on the left and shortening of the left femur and tibia, displacement of the patella and two inch leg length discrepancy. Jennifer has mild mental retardation, microcephaly, congenital left facial paralysis, dysmorphia facies, oligondontis and kyphosis. In her language evaluation, she scored a receptive language age of 2 years, 8 months, communicated with a system of one or two word utterances, gestures and pointing, and demonstrated poor mobility of speech articulators. Her gross motor age was determined to be solid at 9-11 months and scattered through 20-23 months. She receives Occupational Therapy, Physical Therapy, Speech and Language Services, Special Education Services and Adaptive Physical Education. Despite her extraordinary limitations, Jennifer demonstrated progress. The 1992 report shows that she participated in Adapted Physical Education activities to improve balance, balance for locomotion and the ability to ambulate independently with a roller walker. She demonstrated "significant progress" with ambulation activities, consisting of global strengthening, stair use and negotiating ramps, curbs and grass when walking without an assistive device. Interviews with her classroom teacher at Livingston School show progress with balance and endurance. Jennifer was described as cooperative throughout her assessment, although easily distracted. She is unable to achieve standing from the floor, but safely and independently negotiates stairs. Jennifer was found to continue to require Physical Therapy services to maximize her educational potential. Her occupational therapy reevaluation demonstrated fine motor skills at the 31 month developmental level. Jennifer was described by her teacher as very social in the classroom, knowledgeable of the school grounds and able to get around with minimum staff supervision. Her limited writing skills were not expected to change significantly. The report found her making progress toward accomplishing the goals of her Independent Education Plan with continued improvement expected. It concluded that she continues to require occupational therapy services in the public school system.
Jennifer is presently a student in the Special Education curriculum at Grace King School. Although severely disabled, Jennifer received superior marks on her report card for working within the limited parameters of her physical and mental abilities.
FIRST AND SECOND ASSIGNMENTS OF ERROR: Does Jennifer Blanque's status as a special education student enrolled in an Independent Education Plan curriculum qualify as a secondary school student in good standing pursuant to La.R.S. 9:315.22(C)?
The general statement of the parental support obligation is found in La.C.C. art. 227:
Fathers and Mothers, by the very act of marrying, contract together the obligation *570 of supporting, maintaining, and educating their children. [Emphasis supplied.]
The Code article essentially restates the provisions of the Codes of 1804, 1808 and 1825, and has its roots in the fundamental human relationship between the parent and child. Planiol notes that the responsibility of directing the child's education, of controlling its conduct and of forming its character and ideas is the essential part of the task that parents have to fulfill. 1 Planiol, Traite Elementaire de Droit Civil, No. 1657, Louisiana State Law Institute English translation.
The Codal support obligation is not limited by its own terms to the child's minority. To the general support obligation the Civil Law Ancillaries provide a statutory exception in La.R.S. 9:315.22:
A. Where there is a child support award..., the award ... shall terminate automatically without any action by the obligor upon ... [the] child's attaining the age of majority, ....
To this exception to the general rule, La.R.S. 9:315.22(C) provides an exception:
An award of child support continues with respect to any unmarried child who attains the age of majority, ..., as long as the child is a full-time student in good standing in a secondary school, has not attained the age of nineteen, and is dependent upon either parent.[3]
We find that, under the particular circumstances of this case, Jennifer's Independent Educational Plan comes within the intent of La.R.S. 9:315.22(C)'s exception.
The evidence adduced at the hearing below shows conclusively that Jennifer is a full-time student at Grace King High School. Her curriculum, which at this time leads to a Certificate of Achievement rather than to a high school diploma, embodies standards against which Jennifer's performance is measured. By that measure, as reflected in her report cards for the 1995 term, she is achieving at a Superior level. The exception statute requires that Jennifer be a full time student, which she is; it requires that she be enrolled in a secondary school, which Grace King High School is; it requires that she not have attained the age of nineteen, which she has not; and it requires that she is dependent upon either parent, which she clearly is. The statute does not require that college entrance, a high school diploma or a certain grade point average be the goal of Jennifer's enrollment. The record shows that Jennifer is cooperating in her special education program and demonstrating progress toward her goal of independent living.
Her father suggests that the opinion of the First Circuit Court of Appeal in Park v. Park, 93 0115 (La.App. 1 Cir. 3/30/94); 634 So.2d 83 authorizes him to terminate his support of Jennifer's education. Our reading of that case compels a directly contrary result. In Park, the father contended that his obligation terminated because his 18 year old son was employed and was enrolled as a full time student in Folks Vocational-Technical School in Jackson, Louisiana, where he was pursuing a GED and certification as an automotive technician. The court noted that "secondary school" is not a term defined by statute, and found that the vocational-technical school was within the meaning of "secondary school" as that term was used in the statute. The court held that due consideration should be given not only to the type of educational facility, but also to the curriculum. The court implicitly recognized the principle that it should consider the substance rather than merely the form of the educational environment in which the dependent child is working. In the case at bar, Jennifer is enrolled in a recognized public secondary school pursuing the curriculum and goals set forth in her independent education plan. There is an academic component to that plan as well as physical components made necessary by her physical disabilities. We find that the requirements of La.R.S. 9:315.22(C) have been met and Jennifer's educational expenses remain the obligation of her father in accordance with the previous judgments of the trial court until Jennifer attains the age of nineteen. These assignments of error are without merit.
*571 THIRD ASSIGNMENT OF ERROR: Did the trial court err in continuing all previously issued orders of the court inasmuch as La.R.S. 9:315.22 provides no basis for the continuation of mandatory visitation orders past Jennifer's age of majority?
In this assignment of error, Blanque interprets the trial court's judgment as continuing all orders into the unlimited future. While it is arguable that the judgment does apply indefinitely, since it keeps prior judgments in place until further orders of the Court, clearly the previously issued orders cannot continue past Jennifer's nineteenth birthday.
La.C.C. art. 229 is silent as to visitation, and we find no authority for continuing court-mandated visitation after a child has attained nineteen years of age.[4]
FOURTH ASSIGNMENT OF ERROR: The trial court erred in denying Blanque's Exception of Venue, since all actions pursuant to which Jennifer might be entitled to an award of support from Blanque may only be filed in Jefferson Parish.
The record shows that Dwyer and Blanque presently reside in Jefferson Parish, where Dwyer sought Jennifer's tutorship pursuant to La.C.C. arts. 354 et seq.[5]
The issue is governed by La.C.C.P. art. 74.2, which provides in pertinent part:
A. A proceeding ... to establish an obligation of support may be brought in the parish where a party is domiciled or in the parish of the last matrimonial domicile.

* * * * * *
C. A proceeding for modification of support may be brought in the parish where the person awarded support is domiciled or in the parish where the support award was rendered. If the person awarded support is no longer domiciled in the state, the proceeding for modification of support may be brought in the parish where the other person is domiciled or in the parish where the support award was rendered.

This venue is proper until Jennifer attains the age of nineteen.[6] The proper court to enforce the alimentary duty to support Jennifer beyond her nineteenth birthday is the court of domicile of all parties, in this case, the 24th Judicial District Court for the Parish of Jefferson.
CONCLUSION AND DECREE
The judgment of the trial court is amended to be effective until Jennifer Blanque attains the age of nineteen, and is otherwise affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] On 3 May 1993, the trial court issued written reasons. The judgment was based on two considerations:

First, I determined that Mr. Blanque's income was greater than that asserted by him at trial. Mr. Blanque's testimony concerning his income was discredited at trial. Secondly, I did, indeed, deviate from the guidelines based on the extraordinary needs of Jennifer Blanque. As was discussed in my reasons for the December 27, 1990 judgment, Jenny is severely disabled. Her medical and care-taking needs are not contemplated by the support awarded in the guidelines.
[2] The foregoing factual summary is taken from this Court's opinion before remand, Blanque v. Blanque, 617 So.2d 11, 11-12 (La.App. 4 Cir. 1993).
[3] These provisions are not to be confused with the alimentary obligation of La.C.C. art. 230.
[4] We wish to make clear that nothing in this opinion should be read as denying the right of a non-custodial parent of a mentally retarded person to seek visitation rights under appropriate circumstances pursuant to La.C.C. arts. 354-362.
[5] The alleged procedural deficiencies of that proceeding brought to the Court's attention by supplemental brief and in oral argument are reviewable by the Louisiana Fifth Circuit Court of Appeal, and are not necessary to our resolution of the issues on appeal before this court.
[6] See discussion of First and Second Assignments of Error.